UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Allen Rheaume,

      Plaintiff,

    v.                                                                    Civil Action No. 5:11-CV-72

Andrew Pallito, Susan Onderwyzer,
Jackie Kotkin, David Peebles,
Michele Young, Cullen Bullard,
Keith Tallon, Krista Prior,
Marshall Rich, Tom Rowden,
Sandra Olberg, Tammy Kennison,
Georgia Cummings, Jerri Brouillette,
Tammy Smith, Steve Hoke,
Anita Carbonell, Lynn Roberto,
Sue Ransom Kelly, Edward Holtrop,
and Heather Ward,

      Defendants.

# REPORT AND RECOMMENDATION
(Doc. 6)

Plaintiff Allen Rheaume, a Vermont inmate proceeding *pro se*, brings this action claiming that Defendants have violated his constitutional rights. Specifically, Mr. Rheaume contends that he was improperly classified as a sex offender without proper notice or due process; that his release on conditional re-entry was arbitrarily delayed; and that his programming requirements violate Vermont Department of Corrections ("DOC") policies. Defendants have moved to dismiss, arguing Eleventh Amendment immunity and failure to state a claim. (Doc. 6.) Also pending are Mr. Rheaume's motions for a preliminary injunction and for a declaratory judgment. (Docs. 27 and 28.)

For the reasons set forth below, I recommend that Defendants' motion to dismiss be GRANTED in part and DENIED in part. By separate order, Defendants will be required to respond to Mr. Rheaume's outstanding motions.

## Factual Background

Mr. Rheaume is currently serving a state court sentence for lewd and lascivious conduct. A recent Vermont Supreme Court decision involving Mr. Rheaume noted that he "is serving a life sentence as a habitual offender. He has forty-eight convictions, five of which either involve sex crimes or have a sexual element. He also has had sixty-three disciplinary report convictions while incarcerated." *Rheaume v. Pallito*, 2011 WL 2585977, at *1 (Vt. July 1, 2011).

On July 24, 2007, DOC officials classified Mr. Rheaume as a high risk sex offender under 13 V.S.A. § 5411b. Section 5411b states that "[t]he designation of high-risk under this section is for the purpose of identifying an offender as one who should be subject to increased public access to his or her status as a sex offender and related information, including Internet access." 13 V.S.A. § 5411b(a). The statute requires "notice and an opportunity to be heard," and provides for a *de novo* appeal under Rule 75 of the Vermont Rules of Civil Procedure. *Id.* at § 5411b(b).

Mr. Rheaume alleges that although the high risk designation was made in 2007, he was not notified of it until December 2009. He now alleges that the designation was made without notice or due process, and was based upon false and inaccurate information. He also claims that his most recent offense does not qualify for a high risk sex offender designation.

Mr. Rheaume further alleges that in March 2009, the DOC required him to participate in Cognitive Self Change and sex abuser treatment programs before it would consider him for release on furlough (conditional re-entry). Mr. Rheaume argues that his underlying conviction did not warrant this change in his programming. He also claims that DOC officials failed to provide any justification for the change until shortly after a state court discovery conference, at which time they cited his criminal and disciplinary histories.

Mr. Rheaume submits that in designating him as a high risk sex offender, Defendants violated his Eighth and Fourteenth Amendment rights, as well as Chapter I, Article 10 of the Vermont Constitution. With respect to his programming requirements, he alleges that certain Defendants acted "arbitrarily," and that they again violated his rights under the Eighth and Fourteenth Amendments, and Chapter I, Article 10 of the Vermont Constitution. The Complaint seeks damages in the amount of $250,000.

## Discussion

### I.   Eleventh Amendment

Defendants first move to dismiss on the basis of Eleventh Amendment immunity. The Eleventh Amendment generally prohibits plaintiffs from recovering damages from state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment"). Exceptions to this general rule apply when there has been an explicit and unequivocal waiver of immunity by a state, or

3

a similarly clear abrogation of the immunity by Congress. *See Graham*, 473 U.S. at 169; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

Here, there has been no relevant waiver of immunity by the State of Vermont. In fact, the Vermont Legislature has specifically preserved the State's immunity under the Eleventh Amendment. *See* 12 V.S.A. § 5601(g). It is also well settled that Congress did not abrogate state sovereign immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 340-42 (1979). Accordingly, Mr. Rheaume's claims for damages against Defendants in their official capacities should be DISMISSED.

## II.     Due Process Claims

Defendants next argue that Mr. Rheaume has failed to state a claim for relief under the Due Process Clause. Specifically, they argue that none of his claims allege the violation of a protected liberty interest. Their argument is presented pursuant to Fed. R. Civ. P. 12(b)(6).

### A.     Motion to Dismiss Standards

To survive a motion to dismiss under Rule 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 1949-50. This assumption of truth does not apply to legal

4

conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Second, a court must determine whether the Complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556-57). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court notes that neither *Iqbal* nor *Twombly* impose "heightened" pleading standards. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010) (rejecting a "heightened pleading standard" under *Iqbal/Twombly* and also rejecting the "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible."). Also, a *pro se* litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Courts must therefore "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" *Berlin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This guidance applies with particular force when a plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

### B.     Sex Offender Designation

Defendants first address Mr. Rheaume's claims regarding his sex offender designation. The allegations in the Complaint are (1) that the DOC designated Mr. Rheaume as a high risk sex offender without notice or an opportunity to be heard, and (2) that the designation was not supported by his underlying conviction and was based upon inaccurate information. Defendants argue generally that the Vermont sex offender registry law does not provide offenders with a right to due process. (Doc. 6 at 5.)

Defendants rely upon *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003), in which the Supreme Court considered whether due process entitled sex offenders to a hearing prior to the public disclosure of information through Connecticut's sex offender registry. In that case, the purpose of the hearing would be to determine whether offenders were likely to be "currently dangerous." The Supreme Court noted, however, that the Connecticut registry "explicitly states that officials have not determined that any registrant is currently dangerous," and that the registry was instead based upon the fact of a previous conviction. *Connecticut Dep't of Pub. Safety*, 538 U.S. at 4. The Court therefore concluded that no hearing was required "because due process does not require the opportunity to prove a fact [current danger] that is not material to the State's statutory scheme." *Id.*

The instant case presents a different set of questions. The first is whether Mr. Rheaume was entitled to notice and a hearing before he could be declared a "high risk" offender. While in *Connecticut Dep't of Pub. Safety* the question of "current danger" was not set forth in the statute, "high risk" is the exclusive focus of Section 5411b. 13 V.S.A.

6

§ 5411b. Moreover, the statute explicitly provides for both notice and a hearing. *See id* at § 5411b(b). Accordingly, the "high risk" determination and notice and hearing requirements are integral parts of "the State's statutory scheme." *Connecticut Dep't of Pub. Safety*, 538 U.S. at 4.

The second question regarding Mr. Rheaume's sex offender designation is whether a wrongful designation violates due process. The Supreme Court's opinion in *Connecticut Dep't of Pub. Safety* did not address this issue. The court should therefore find that *Connecticut Dep't of Pub. Safety v. Doe* does not control with respect to either of the questions being raised in Mr. Rheaume's designation claim.

Nonetheless, Defendants' legal challenge to Mr. Rheaume's due process claim remains at issue. In order to prevail on a due process claim, a plaintiff must prove that he or she (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient procedural safeguards. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). Defendants argue that Mr. Rheaume's claims fail under the first prong of this test; specifically, that his designation as a high risk sex offender did not trigger a liberty interest.

In *Doe v. Pataki*, 3 F. Supp. 2d 456 (S.D.N.Y. 1998), the court held that inclusion in New York's sex offender registry does implicate a liberty interest. The *Doe* court reasoned that registration as a sex offender carries with it "shame, humiliation, ostracism, loss of employment . . . and a multitude of other adverse consequences" that result in a "tangible impairment of a right in addition to the harm to reputation." *Id.* at 467-68.

Other courts have reached the same conclusion with respect to the same or similar statutes. *See, e.g., Woe v. Spitzer*, 571 F. Supp. 2d 382, 385 (E.D.N.Y. 2008); *Doe v. Poritz*, 662 A.2d 367, 418-19 (N.J. 1995) (construing New Jersey sex offender registration statute, and holding that harm to reputation coupled with harm to the Constitutional right to privacy, implicates a federally protected Constitutional interest); *cf. Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (holding that inclusion in registry implicates liberty right to future employment); *but see Fowlkes v. Parker*, 2010 WL 5490739, at *7 (N.D.N.Y. Dec. 9, 2010) ("there is not unanimity on the question of whether the requirement to register as a sex offender in and of itself implicates [a Fourteenth Amendment] liberty interest") (citing *Rose v. Goldman*, 2009 WL 4891810 (E.D.N.Y. Dec. 9, 2010)).[1]

Assuming that a liberty interest exists, a hearing may still be unnecessary. Indeed, courts have held that designating someone as a sex offender does not require a hearing where the designation is based upon a valid prior conviction. *See, e.g., Connecticut Dep't of Pub. Safety,* 538 U.S. at 4; *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997) ("[a]n inmate who has been convicted of a sex crime in a prior adversarial setting, whether as a result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process. Prison officials need do no more than

---

[1] In *Rose*, the court addressed the question of whether prisoners "who have not been convicted of a sex offense have a liberty interest in not being classified or treated as a sex offender without due process protections." 2009 WL 4891810, at *6. In this case, Mr. Rheaume appears to have been convicted of a sex offense, as a conviction for lewd and lascivious conduct qualifies as a sex offense under Vermont law. *See* 13 V.S.A. § 5401(10)(A)(iii). *Rose* may therefore be distinguishable.

8

notify such an inmate that he has been classified as a sex offender because of his prior conviction for a sex crime."); *Woe*, 571 F. Supp. 2d at 385.

In this case, however, Mr. Rheaume contends that his conviction did *not* justify his designation under Section 5411b as a high risk offender. Therefore, questions remain – both legal and factual – as to whether his designation required additional procedures in order to satisfy due process requirements. *See Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010) ("[I]t continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest."); *see also Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004); *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000).[2] I therefore recommend that, at this early stage in the case, the motion to dismiss Mr. Rheaume's due process claim with respect to his designation as a high risk sex offender be DENIED without prejudice.

## C. Release on Furlough

Defendants next argue that Mr. Rheaume's denial of furlough did not violate a protected liberty interest. The furlough program in Vermont exists as a matter of state statute. *See* 28 V.S.A. § 808. The Supreme Court has recognized that "States may under

---

[2] Mr. Rheaume was classified not only as a sex offender, but as a high risk sex offender. Assuming that the sex offender classification was justified by his underlying conviction, designation as high risk may still have required additional procedural protections. *See Fowlkes*, 2010 WL 5490739, at *8 (citing *Henderson v. Heffler*, 2010 WL 2854456, at *5 (W.D.N.Y. Jul. 19, 2010)). Neither party has briefed this issue.
   Nor have Defendants addressed the fact that Section 5411b(b) requires notice and a hearing, and the related legal question of whether such a requirement in a state statute creates a due process right. 13 V.S.A. § 5411b(b). Finally, the parties have not addressed the potential impact, if any, of Mr. Rheaume's related state court litigation in which he is challenging his high risk designation. *Rheaume*, 2011 WL 2585977, at *1. The parties may wish to discuss these questions in future motions and briefing.

9

certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). The *Sandin* decision held that in the prison context, such a liberty interest "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

  Here, Mr. Rheaume has not yet been released on furlough under his current sentence. If he is denied furlough, or denied access to furlough, he will "simply continue in the regular prison program" until the end of his sentence, "as do many other inmates." *Lee v. Governor of State of N.Y.*, 87 F.3d 55, 58 (2d Cir. 1996). Accordingly, denial of furlough would not result in an "atypical or significant hardship . . . in relation to the ordinary incidents of [his] prison life." *Sandin*, 515 U.S. at 484; *see Lee*, 87 F.3d at 58; *see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (holding that prisoners have no "inherent right" to parole or other conditional release from prison before the expiration of a valid sentence).

  Furthermore, under Vermont law, the granting of furlough is entirely discretionary. *See* 28 V.S.A. § 808; *Parker v. Gorczyk*, 170 Vt. 263, 268 (1999); *Conway v. Cumming*, 161 Vt. 113, 118 (1991) (§ 808(a) contains "no limitations on the discretionary authority granted to the Commissioner"). The furlough statute reads, in relevant part: "The department may extend the limits of the place of confinement of an inmate at any correctional facility if the inmate agrees to comply with such conditions of supervision the department, in its sole discretion, deems appropriate for that inmate's furlough." 28 V.S.A. § 808(a). This court has previously concluded that, given the

10

DOC's "unbridled discretion with respect to each furlough applicant, it cannot be argued that [Plaintiff] had a legitimate expectation of release entitling him to due process protection." *Elliott v. Vermont Dep't of Corr.*, 2008 WL 5104203, at *3 (D. Vt. Nov. 6, 2008) (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (no state-created liberty interest when decision-maker can deny relief "for any constitutional reason or for no reason at all")); *see also Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir. 1997) ("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest."); *Seifert v. Hofmann*, 2009 WL 4931323, at *6 (D. Vt. Dec. 15, 2009) (holding that inmate had "no liberty interest in early release from prison") (citations omitted).  I therefore recommend that the motion to dismiss Mr. Rheaume's due process claim with respect to his alleged denial of access to furlough be GRANTED.

### D.     Programming Requirements

Defendants' next argument is that Mr. Rheaume had no due process rights regarding Cognitive Self Change and other sex abuser programming.  Again, the *Sandin* standard would apply.  *See, e.g., Carroll v. Callanan*, 2007 WL 965435, at *4 (N.D.N.Y. Mar. 30, 2007).  As the court noted in *Carroll*,

> [t]he Supreme Court has held that '[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not . . . constitute [an] atypical and significant hardship [ ] in relation to the ordinary incidents of prison life.' *McKune v. Lile*, 536 U.S. 24, 37-38 (2002).  Since '"most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody."' *Id*. at 36 (quoting *Pell v. Procunier*, 417 U.S. 817, 823 (1974)).

Here, the DOC's programming clearly bears a rational relation to legitimate penological objectives.  The court should therefore find that requiring Mr. Rheaume to participate in such programming did not involve a liberty interest, and therefore did not deprive him of any due process rights.  *See Wright v. Krom*, 2011 WL 4526405, at *3 (S.D.N.Y. Sept. 29, 2011) ("Plaintiff's allegations that Defendants improperly made program assignments based on his sexual offender status fail to raise a due process claim because prison work assignments or programs are not a protected liberty interest enjoyed by prison inmates."); *Fitfield v. Eaton*, 2009 WL 3429791, at *2-3 (W.D.N.Y. Oct. 20, 2009) (granting motion to dismiss inmate's claim that he was denied parole opportunities due to his refusal to participate in sex offender counseling because inmate had no liberty interest in parole, conditional release, or choosing programming).  Defendants' motion to dismiss Mr. Rheaume's claims with respect to his required programming should therefore be GRANTED.

### III.   Personal Involvement

Defendants' final argument is that Mr. Rheaume has failed to allege that they were personally involved in unconstitutional conduct.  If the court accepts this Report and Recommendation, the only remaining constitutional question pertains to Mr. Rheaume's designation as a high risk sex offender.  Because the Complaint alleges that only some Defendants were involved or made aware of the designation process, the remaining Defendants, as set forth below, are entitled to dismissal.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §

12

1983.'" *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1991)).  Thus, a plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  In this case, Mr. Rheaume contends that "Defendants Brouillette, Hoke and Smith invoked a high risk sex offender designation with[]out due process to plaintiff."  (Doc. 5 at 4.)  No other Defendants are alleged to have been involved in the designation itself.

Mr. Rheaume also claims that he filed grievances regarding his sex offender classification, and that various Defendants should be held liable for their collective failure to take corrective action.  Specifically, the Complaint states that Defendant Lynn Roberto took "no action" on a grievance, and that the grievance was later dismissed by prison Superintendent Anita Carbonell.  The Complaint also alleges that Defendant Sue Ransom Kelly responded to a second grievance by referring Mr. Rheaume to Superintendent Carbonell's dismissal of the first grievance.  (Doc. 5 at 6.)

When a plaintiff's § 1983 claims involve the filing of prison grievances and other supervisory involvement, courts generally apply the multi-factor test for supervisor liability set forth in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In *Colon*, the Second Circuit Court of Appeals held that:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

13

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873.[3]

Courts have determined that when a prison official receives a grievance and fails to remedy the alleged wrong, the supervisor may be liable under the second prong of the *Colon* standard. *See, e.g., Bourgoin v. Weir*, 2011 WL 4435695, at *5 (D. Conn. Sept. 23, 2011) (citing *Walker v. Pataro*, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002)). Courts have also held, however, that merely "affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca*, 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007); *see also Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007) (dismissing a complaint where "plaintiff does not explain how a denial of a grievance violates plaintiff's constitutional or federal rights so as to state a claim under § 1983"). Furthermore, broad, conclusory allegations that a high-ranking defendant was informed of an incident are insufficient. *See, e.g., Hernandez v. Goord*, 312 F. Supp. 2d

---

[3] In *Iqbal*, the Supreme Court ruled that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S. Ct. at 1948. This ruling has led several courts to conclude that only some of the *Colon* factors remain viable. *See, e.g., Bellamy v. Mt. Vernon Hosp*, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009). Other courts have held that the personal involvement requirements for supervisors, post- *Iqbal*, depend "on the constitutional provision alleged to have been violated," and that *Iqbal* most directly applies to intent-based constitutional claims (e.g. racial discrimination). *See Qasem v. Toro*, 737 F. Supp. 2d 147, 151 (S.D.N.Y. 2010); *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009). For purposes of this case, particularly because it does not allege the sort of intentional discrimination addressed in *Iqbal*, I assume that all of the *Colon* factors still apply.

537, 547 (S.D.N.Y. 2004) (no claim stated where plaintiff merely asserts that supervisor received letters of complaint).

Following these guidelines, the court should find that Mr. Rheaume has stated plausible claims of personal involvement against Defendants Roberto and Kelly. Reading the Complaint liberally, these Defendants were directly presented with grievances and failed to take appropriate action. The dismissal of the first grievance by Superintendent Carbonnell, however, is the sort of attenuated supervisory involvement that generally does not support liability. *See, e.g., Manley v. Mazzuca*, 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007); *Foreman v. Goord*, 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) ("The fact that [the prison superintendent] affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement"). As noted in *Thompson v. New York*, 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001), "[w]ere it otherwise, virtually every prison inmate who sues for constitutional torts . . . could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent."

With respect to DOC Commissioner Andrew Pallito, Mr. Rheaume alleges generally that "Defendant Pallito's inaction in the supervision of the above mentioned defendants and failure to answer the plaintiff's numerous grievances and correct the plaintiff's classification" violated his constitutional rights. *Id.* at 8. Even if the court assumes that these allegations somehow relate to Mr. Rheaume's designation as a high risk sex offender, it is well established that the mere receipt of grievances by a high-ranking prison official, without more, will not result in liability. *See Gonzales v. Wright*,

15

2010 WL 681323, at *10 (N.D.N.Y. Feb. 22, 2010); *see also Booker v. Doe*, 2008 WL 4527601, at *7 (N.D.N.Y. Sept. 30, 2008), *aff'd*, 368 F. App'x 186 (2d Cir. 2010). Furthermore, with respect to the supervision claim, *Colon* requires allegations of *grossly* negligent supervision. 58 F.3d at 873. Mr. Rheaume's allegations do not plausibly support such a claim. *See AT&T Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (gross negligence "is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing").

I therefore recommend that the motion to dismiss Defendants for lack of personal involvement be GRANTED with the exception of Defendants Brouillette, Hoke, Smith, Roberto and Kelly. The motion to dismiss as to these latter Defendants should be DENIED without prejudice.

### IV.  Remaining Claims and Motions

Finally, as noted above, the Complaint alleges that Defendants violated Mr. Rheaume's rights under the Eighth and Fourteenth Amendments. The Complaint also alleges violations of the Vermont Constitution. Mr. Rheaume's reply memorandum references a potential equal protection claim. (Doc. 33 at 2.) Of these various claims, Defendants have addressed only the due process claims under the Fourteenth Amendment.

Also before the court are Mr. Rheaume's motions for injunctive and declaratory relief. (Docs. 27 and 28.) Defendants have not yet responded to these motions. Because I am recommending that Defendants' current motion to dismiss be granted only in part, and because other claims not addressed in that motion are outstanding, Defendants' must

16

respond to the pending motions. Accordingly, by separate Order, the court will require that responses to Mr. Rheaume's motions be filed within 21 days.

## Conclusion

For the reasons set forth above, I recommend that Defendants' motion to dismiss (Doc. 6) be GRANTED in part and DENIED in part. Specifically, I recommend that the motion be GRANTED with respect to Mr. Rheaume's due process claims regarding his delayed furlough release and programming, and DENIED with respect to his designation as a high risk sex offender. All claims against Defendants Pallito, Onderwyzwer, Kotkin, Peebles, Young, Bullard, Tallon, Prior, Rich, Rowden, Olberg, Kennison, Cummings, Carbonell, Holtrop and Ward should be DISMISSED for lack of personal involvement.

Dated at Burlington, in the District of Vermont, this 28th day of November, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See Fed. R. Civ. P. 72(a); Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).