UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Allen Rheaume,

    Plaintiff,

    v.                                                  Civil Action No. 5:11-cv-72

Andrew Pallito, Susan Onderwyzer,
Jackie Kotkin, David Peebles,
Michele Young, Cullen Bullard,
Keith Tallon, Krista Prior,
Marshall Rich, Tom Rowden,
Sandra Olberg, Tammy Kennison,
Georgia Cummings, Jerri Brouillette,
Tammy Smith, Steve Hoke,
Anita Carbonell, Lynn Roberto,
Sue Ransom Kelly, Edward Holtrop,
and Heather Ward,

    Defendants.

## **REPORT AND RECOMMENDATION**
(Docs. 57, 62)

Plaintiff Allen Rheaume, a Vermont inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 claiming that Defendants violated his constitutional rights. Mr. Rheaume contends that he was improperly classified as a "high risk sex offender" without proper notice or due process; that he was denied parole without due process; that his release on conditional re-entry has been arbitrarily delayed; that his programming requirements violate Vermont Department of Corrections ("DOC") policies; and that he was denied "a correct treatment program" in violation of state law. He brings federal claims under the Due Process Clause of the Fourteenth Amendment, the Eighth

Amendment, and the Equal Protection Clause; his state law claims arise under the Vermont Constitution and Vermont statutory law.

Before the court is Defendants' "Motion to Dismiss All Remaining Claims in the First Amended Complaint." (Doc. 57.) Specifically, Defendants now move under Fed. R. Civ. P. 12(b)(6) to dismiss Mr. Rheaume's claims that (1) he was denied parole without due process in violation of the Fourteenth Amendment; and (2) he was denied "a correct treatment program" in violation of Vermont state law. Also pending before the court is Mr. Rheaume's Motion to Compel Discovery. (Doc. 62.)

## Factual Background

Mr. Rheaume is currently serving a state court sentence for lewd and lascivious conduct. A recent Vermont Supreme Court decision involving Mr. Rheaume noted that he "is serving a life sentence as a habitual offender. He has forty-eight convictions, five of which either involve sex crimes or have a sexual element. He also has had sixty-three disciplinary report convictions while incarcerated." *Rheaume v. Pallito*, 2011 VT 72, ¶ 3, 190 Vt. 245, 30 A.3d 1263.

On July 24, 2007, DOC officials classified Mr. Rheaume as a high risk sex offender under 13 V.S.A. § 5411b. Section 5411b states that "[t]he designation of high-risk under this section is for the purpose of identifying an offender as one who should be subject to increased public access to his or her status as a sex offender and related information, including Internet access." 13 V.S.A. § 5411b(a). The statute requires "notice and an opportunity to be heard," and provides for a *de novo* appeal under Rule 75 of the Vermont Rules of Civil Procedure. *Id.* at § 5411b(b).

In his Amended Complaint (Doc. 55), Mr. Rheaume alleges that although the high risk designation was made in 2007, he was not notified of it until December 2009. He now alleges that the designation was made without notice or due process, and was based upon false and inaccurate information. He also claims that his most recent offense does not qualify for a high risk sex offender designation.

Mr. Rheaume further alleges that the DOC imposed unwarranted programming requirements upon him, and denied him access "to a correct treatment program." *Id*. at ¶ 32. He alleges that in March 2009, the DOC required him to participate in Cognitive Self Change and sex abuser treatment programs before it would consider him for release on furlough (conditional re-entry). Mr. Rheaume argues that his underlying conviction did not warrant this change in his programming. He also claims that DOC officials failed to provide any justification for the change until shortly after a state court discovery conference, at which time they cited his criminal and disciplinary histories.

Finally, Mr. Rheaume alleges that the Vermont Parole Board denied him early release on parole because of his designation as a high risk sex offender. *Id*. at ¶ 16.

Mr. Rheaume submits that in designating him as a high risk offender, Defendants violated his due process rights under the Fourteenth Amendment, as well as Chapter I, Article 10 of the Vermont Constitution, in two distinct ways. Mr. Rheaume alleges both that Defendants made the designation without affording him adequate process, and that, once made, the high risk designation deprived him of adequate process before he was denied early release by the Parole Board. Mr. Rheaume further claims that the high risk

offender designation violated his right to be free from cruel and unusual punishment under the Eighth Amendment.

With respect to his programming requirements, he alleges that certain Defendants acted "arbitrarily," and that they again violated his rights under the Eighth and Fourteenth Amendments, and Chapter I, Article 10 of the Vermont Constitution. He further claims that Defendants' alleged denial of a correct treatment program violated 28 V.S.A. § 903. In one of his legal memoranda (Doc. 33), Mr. Rheaume references a potential equal protection claim. The Amended Complaint seeks compensatory damages in the amount of $250,000, as well as $250,000 in punitive damages.

## **Procedural Background**

Defendants filed their first motion to dismiss on June 21, 2011. The court granted the motion in part, dismissing all claims for damages against Defendants in their official capacities pursuant to the Eleventh Amendment. The court also dismissed Mr. Rheaume's federal due process claim pertaining to his allegation that he had been denied release on furlough, and his federal due process claim pertaining to compulsory programming. The court further dismissed claims against several Defendants for lack of personal involvement. The court denied Defendants' motion to dismiss Mr. Rheaume's claim that his designation as a high risk offender violated due process.

Defendants filed a second motion to dismiss on January 5, 2012. The court granted the motion, and dismissed Mr. Rheaume's Eighth Amendment and Equal Protection claims. Claims brought under the Vermont Constitution were not addressed in either of Defendants' first two motions to dismiss, and thus remain in the case.

On July 13, 2012, the court granted leave for Mr. Rheaume to file an Amended Complaint except to the extent that it raised additional Eighth Amendment claims. The Amended Complaint contains the additional factual allegation that Defendant Georgia Cummings–who had previously been dismissed from the case for lack of personal involvement–changed "[t]he plaintiff's Static 99 and RRASOR coding score . . . on the date of July 19, 2007." (Doc. 55 ¶ 18.5.) Mr. Rheaume explains elsewhere in his filings that these scores are used as part of a sex offender assessment. (Doc. 33 at 3.) The Amended Complaint also adds claims that Mr. Rheaume's high risk offender designation "denied [him] a liberty interest[] right to parole under the Fourteenth Amendment of the United States Constitution and Chapter I[,] Article 10 of the Vermont Constitution," *id.* at ¶ 32; and that Defendants "denied [Mr. Rheaume] a right to a correct treatment program and a right to treatment pursuant to Title 28 V.S.A. . . . Section 903[.]" *Id*. These new claims are the subject of Defendants' present motion to dismiss.

Also before the court is Mr. Rheaume's Motion to Compel Discovery. Mr. Rheaume seeks an order compelling the production of documents in response to his July 1, 2011 "first request for production of documents." (Doc. 62 at 1.)

## Discussion

I. **Defendants' Motion to Dismiss**

Although styled as a motion to dismiss "all remaining claims in the First Amended Complaint," Defendants' present Motion only addresses the two claims raised for the first

time in the Amended Complaint.[1]  Defendants argue first that Mr. Rheaume's federal due process claim regarding his denial of parole should be dismissed because Vermont inmates have no protectable expectation–or "liberty interest"–in being released on parole. Second, Defendants contend that a prior Vermont Supreme Court decision forecloses judicial review of Mr. Rheaume's claim that he was denied "a correct treatment program" as required by state law.

### A.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2).  In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a Rule 12(b)(6) motion to dismiss. 556 U.S. at 679.  First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 678.  This assumption of truth does not apply to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Second, a court must determine whether the Complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.  "A claim has

---

[1]  Defendants' Motion incorrectly asserts that "[a]ll of Rheaume's claims have been dismissed with the exception of two potential theories." (Doc. 57 at 2.)  But as stated above, the court *denied* Defendants' motion to dismiss Mr. Rheaume's due process claim regarding his designation as a high risk offender, and the court has had no occasion to address the state constitutional claims alleged in the original Complaint.

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556-57). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court notes that neither *Iqbal* nor *Twombly* impose "heightened" pleading standards. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010) (rejecting a "heightened pleading standard" under *Iqbal/Twombly* and also rejecting the "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible."). Also, a *pro se* litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Courts must therefore "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" *Berlin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This guidance applies with particular force when a plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

  **B.**  **Fourteenth Amendment Due Process Claim**

Mr. Rheaume claims that, because of his designation as a high risk sex offender, he did not receive constitutionally adequate process before he was denied early release on parole. Defendants contend that this claim fails as a matter of law because Vermont

7

inmates have no constitutionally protected expectation of early release under the Vermont parole statute.

In order to prevail on a Fourteenth Amendment due process claim, a plaintiff must prove that he or she (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998). Defendants' motion to dismiss is directed only at the first prong of this test, as they argue that Mr. Rheaume does not possess an "actual liberty interest" in being released on parole before the expiration of his prison sentence.

Generally, '[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). But state law, including statutes that establish parole, "may create enforceable liberty interests in the prison setting." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989); *see also Barna v. Travis*, 239 F.3d 169, 170-71 (2d Cir. 2001). Therefore, "[i]n order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna*, 239 F.3d at 170.

In *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979), the Supreme Court held that not every parole system gives rise to a constitutionally protected interest in parole release. *Id.* at 11. Instead, the Court explained that whether a state-created parole system creates a liberty interest–that is, the sort of "legitimate

expectancy of release" that triggers due process protection–turns on the amount and nature of the discretion afforded to state officials who decide whether an inmate will receive parole. *See id.*; *Board of Pardons v. Allen*, 482 U.S. 369, 374-75 (1987). Under this analysis, the Court found that a Nebraska parole statute created a protected liberty interest because it stated that the Board of Parole "*shall*" order release "*unless*" the Board found one of four designated justifications for deferring release. *See Greenholtz*, 442 U.S. at 11-12; Neb. Rev. Stat. § 83-1, 114(1) (1981) (emphasis supplied). Conversely, courts have held that no constitutionally protected liberty interest arises from parole statutes that "do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist." *Booth v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979); *see also Edwards v. Goord*, 362 Fed. App'x 195, 196 (2d Cir 2010) ("[p]risoners do not have a protected liberty interest in parole where the relevant statutory scheme endows prison authorities with discretion over the decision whether to grant it"). Absent the mandatory "shall" formulation that the Supreme Court found significant in *Greenholtz*, inmates lack the "legitimate claim of entitlement" to parole that warrants constitutional due process protection. *See id.*; *Kentucky Dep't of Corr.*, 490 U.S. at 460.

Under *Greenholtz*, then, the court must examine the Vermont statute governing parole to determine whether Mr. Rheaume has a protected liberty interest. Vermont Statutes, Title 28, Section 502a(b)-(c), "Release on Parole," provides:

> b) An inmate *shall* be released on parole by the written order of the parole board *if* the board determines:
>
>> (1) the inmate is eligible for parole;

9

> (2) there is a reasonable probability that the inmate can be released without detriment to the community or to the inmate; and
>
> (3) the inmate is willing and capable of fulfilling the obligations of a law-abiding citizen.
>
> (c) A parole shall be ordered only for the best interest of the community and of the inmate, and shall not be regarded as an award of clemency, a reduction of sentence or a conditional pardon.

*Id*. (emphasis supplied). Mr. Rheaume argues that because the statute states that an inmate "*shall* be released" on parole "*if*" the Parole Board makes certain, specifically enumerated determinations, it falls within the class of statutes identified in *Greenholtz* as giving rise to a constitutionally protected liberty interest. Defendants do not analyze the statutory language in light of *Greenholtz*; they argue instead that the issue is controlled by the Second Circuit's decision in *Berard v. State of Vt. Parole Board*, 730 F.2d 71 (2d Cir. 1984), in which the court found that, under the statute in place in 1982, a Vermont inmate lacked a protected expectation of parole. According to Defendants, "[t]he aspects of the parole laws that the Court cited in *Berard* as undermining any protectable liberty interest remain" in the parole statute's most recent iteration (Doc. 57 at 3), and therefore the reasoning in *Berard* applies with equal force to Mr. Rheaume's claim.

Defendants' reliance on *Berard* is misplaced. It is true that the version of Vermont's parole statute at issue in *Berard* contained a variation of the mandatory "shall/if" formulation similar to the standard in force today. It provided that an inmate who had served a minimum term "*shall* be released on parole . . . *if* the [parole] board determines there is a reasonable probability that the inmate can be released without detriment to the community or to himself." 28 V.S.A. § 501 (1982) (emphasis supplied).

10

But the Second Circuit explained that, under the statute as it existed in 1982, that "standard . . . applie[d] only to inmates with a minimum term," and Plaintiff Berard "conceded that he ha[d] no minimum term." *Berard*, 730 F.2d at 74. Thus, the court reasoned that "the 'shall/if' standard" was irrelevant, and did not decide whether such language, when applicable, sufficiently bridles the Parole Board's discretion so as to create a constitutionally protected expectation of release. *See id.* at 74-75. In this case, conversely, there is no dispute that Mr. Rheaume is eligible for parole, and that such release is governed by the "shall/if" standard set forth in 28 V.S.A. § 502a. (Doc. 57 at 4); *see also* 28 V.S.A. §§ 501-502a. *Berard* is therefore inapposite.

With *Berard* set aside, the controlling precedent here is the Supreme Court's decision in *Board of Pardons v. Allen*, 482 U.S. 369 (1987). In *Allen*, the Court applied *Greenholtz* to find that Montana's parole statute "create[d] a liberty interest in parole release." *Id.* at 377. In relevant part, the statute provided that "the [parole] board *shall* release on parole . . . any person confined in the Montana state prison or women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]" MONT. CODE ANN. § 46-23-201 (1985) (emphasis supplied).

The Court explained that by stating parole "shall" be ordered "when" certain conditions are met, Montana's statute was sufficiently mandatory even though it set forth standards–such as whether there exists a "reasonable probability" that a particular inmate can be released "without detriment . . . to the community"–that could not be "applied mechanically," and required the exercise of judgment such that reasonable officials could

11

disagree about the statute's correct application in individual cases. *See id*. at 375

(internal quotation marks omitted). According to *Allen*, the Court had already

"determined in *Greenholtz* that the presence of official discretion in this sense is not

incompatible with the existence of a liberty interest in parole release when release is

*required* after the Board determines (in its broad discretion) that the necessary

prerequisites exist." *Id*. at 376.[2]

The Vermont parole statute mirrors the Montana statute in both the discretion it

affords the state's parole board, and the "substantive predicates" to parole release that it

requires. *See Allen*, 482 U.S. at 379 (comparing the "substantive predicates" to parole

release set forth in the relevant Montana and Nebraska statutes). The Vermont statute, by

employing the shall/if formulation, *requires* the Parole Board to order release under

certain enumerated conditions, and therefore, like the statutes at issue in *Greenholtz* and

*Allen*, creates a protectable expectation that "'parole release will be granted' when

designated findings are made." *Allen*, 482 U.S. at 377 (quoting *Greenholtz*, 442 U.S. at

---

[2] In *Sandin v. Connor*, 515 U.S. 472, 479 (1995), the Supreme Court criticized the "mandatory language" framework of *Greenholtz*, and held that the determination of state-created liberty interests for prisoners should instead focus on "the nature of the deprivation," and ensuring "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. But since *Sandin* did not overrule *Greenholtz* or *Allen*, courts have continued to apply those cases when assessing liberty interests in parole. As the Ninth Circuit explained, "[i]t is clear from the Court's framing of the problem in *Sandin*, and from the fact that *Sandin* cited *Allen* with approval, . . . that *Sandin*'s holding was limited to internal prison disciplinary regulations." *McQuillion v. Duncan*, 305 F.3d 895, 902-03 (9th Cir. 2002); *see also Ellis v. District of Columbia*, 84 F.3d 1413, 1417-18 (D.C. Cir. 1996) ("we must follow *Greenholtz* and *Allen* because, unlike *Sandin*, they are directly on point. Both cases deal with a prisoner's liberty interest in parole; *Sandin* does not"); *Blair-Bey v. Quick*, 151 F.3d 1036, 1047 n.9 (D.C. Cir. 1998) ("*Sandin* only alters the liberty-interest analysis applicable to claims relating to the day-to-day management of prisons, and . . . does not apply to parole-related claims") (internal quotation marks omitted); *Crump v. Lafler*, 657 F.3d 393, 399 (6th Cir. 2011) (applying *Greenholtz* and *Allen* to determine whether Michigan parole system creates a liberty interest); *Brown v. U.S. Parole Comm'n*, 2003 WL 194206, at *4 n.6 (S.D.N.Y. Jan. 28, 2003) (agreeing with the D.C. Circuit that *Greenholtz* and *Allen* remain applicable to claims of liberty interests in parole).

12).³  It matters not that the Vermont statute mandates release *if* certain findings are made, as opposed to requiring release *unless* certain conditions exist.  The Supreme Court squarely "reject[ed] the argument that a statute that mandates release 'unless' certain findings are made is different from a statute that mandates release 'if,' 'when,' or 'subject to' such findings being made.  Any such statute creates a presumption that parole release will be granted."  *Id*. at 378 (internal quotation marks omitted).  And substantively, the Vermont statute similarly directs the Parole Board to consider the impact of the inmate's release on the community, and whether the inmate is able to fulfill the obligations of a law-abiding citizen.  *See id*. at 380; 28 V.S.A. § 502a.

Given the relevant similarities between the Vermont parole statute and the state statutes that created protected liberty interests in *Greenholtz* and *Allen*, and because *Berard*–the only case law on which Defendants rely–is distinguishable, the court cannot find as a matter of a law that Mr. Rheaume lacks a liberty interest in being released on parole.  Accordingly, I recommend that Defendants' motion to dismiss Mr. Rheaume's Fourteenth Amendment due process claim be DENIED.

---

³ This understanding is consistent with the Parole Board Manual.  Chapter 10 of the Manual provides that: "It is the policy of the Vermont Parole Board that parole is granted only to those eligible offenders that the Board determines are capable of fulfilling the obligations of a law abiding citizen, and when there is a reasonable probability that the offender can be released without detriment to the community or to the offender, and the offender is willing and capable of fulfilling all obligations of a law abiding citizen." *Id*. at 19 (available at http://www.doc.state.vt.us/about/parole-board/pb-manual).  That the Board alone determines whether such conditions exist is exactly the sort of discretion described above and in *Allen* as "not incompatible with the existence of a liberty interest in parole."  *Allen*, 482 U.S. at 376.  In any event, given the early stage of the proceedings and the limited record before it, it is unnecessary for the court to decide what effect, if any, the Parole Board Manual has on Mr. Rheaume's liberty interest in parole.

### C. State Law Claim

Defendants next seek dismissal of Mr. Rheaume's state law claim that he was "denied . . . a right to a correct treatment program and a right to treatment pursuant to [28 V.S.A. § 903][.]" (Doc. 55 ¶ 32, Doc. 57 at 4-5.) Defendants argue that a Vermont Supreme Court decision in Mr. Rheaume's state court litigation forecloses judicial review of his DOC programming requirements.

Defendants' motion relies solely on *Rheaume v. Pallito*, 2011 VT 72, 190 Vt. 245, 30 A.3d 1263. There, the Vermont Supreme Court addressed Mr. Rheaume's challenge to the DOC's alleged determination "that in order to be released before the expiration of his maximum sentence he must participate in Cognitive Self Change, a program directed at violent offenders, and the Vermont Treatment Program for Sex Abusers." *Id*. at ¶ 3. The court held that once the DOC designated Mr. Rheaume as a high risk offender, the particular programming requirements that it promulgated are a matter of DOC discretion, and are not subject to judicial review under Vermont Rule of Civil Procedure 75.[4] *Id*. at ¶ 11. In Defendants' view, this "decision plainly establishes that there is no basis for Rheaume's claim that his programming requirements violate state law." (Doc. 57 at 5.)

But the claim raised in Mr. Rheaume's Amended Complaint is different. While the Vermont Supreme Court considered the programming that Mr. Rheaume was allegedly *required* to complete, he now alleges that he was unlawfully *denied* a correct

---

[4] Rule 75 provides that "[a]ny action or failure or refusal to act by any agency of the state or a political subdivision thereof, including any department, board, commission, or officer, that is not reviewable or appealable under Rule 74 of these rules . . . may be reviewed in accordance with this rule if such review is otherwise available by law." V.R.C.P. 75.

14

treatment program, and he specifically raises 28 V.S.A. § 903 as the legal basis for his claim.  *See* Report and Recommendation, Doc. 56 at 13 ("there has been no briefing on the question of whether *the denial* of a 'correct treatment' plan violates state law") (emphasis supplied).  Section 903–which Defendants do not address in their motion– provides that "[t]reatment, assessment, evaluation, screening or programming shall not be restricted or denied to inmates on the basis of any anticipated or pending direct or collateral appeal of any criminal conviction, nor on the basis of any position taken by the appellant in any such action."  28 V.S.A. § 903.

Here, Defendants fail to address whether Mr. Rheaume has pleaded a plausible claim under Section 903, or, even assuming he has, whether violations of Section 903 give rise to a private cause of action for damages or are otherwise subject to judicial review under Vermont state law.  Because Defendants present argument that is not relevant to Mr. Rheaume's claim, their motion to dismiss his state law claim should be DENIED.

## II.     Mr. Rheaume's Motion to Compel

Also before the court is Mr. Rheaume's Motion to Compel responses to his July 1, 2001 "first request for production of documents."  (Doc. 62.)  On August 10, 2012, the court denied without prejudice Mr. Rheaume's motion to compel these same documents because Defendants represented that they would make available "the documents that Mr. Rheaume seeks through discovery in this action," and the court assumed "that the full breadth of the documents requested by Mr. Rheaume will be made available[.]"  (Doc. 58 at 3.)  Mr. Rheaume now claims that Defendants have failed to provide the full universe

15

of responsive documents within the time period set by the court. Defendants have not responded to Mr. Rheaume's most recent Motion.

Defendants are hereby ORDERED to respond to Mr. Rheaume's Motion on or before November 29, 2012. If no response is filed, the court will consider granting the Motion to Compel.

## **Conclusion**

For the reasons set forth above, I recommend that Defendants' third Motion to Dismiss (Doc. 57) be DENIED. Defendants are hereby ORDERED to file a response to Mr. Rheaume's Motion to Compel (Doc. 62) on or before November 29, 2012.

Dated at Burlington, in the District of Vermont, this 15th day of November, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).